UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EDELMIRO CRUZ, JR.,

                        Plaintiff,

     v.                                           **DECISION AND ORDER**
                                                              15-CV-176S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

1.    Plaintiff Edelmiro Cruz, Jr. challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that he has been disabled since January 31, 2012, due to the following severe impairments: thoracolumbar disc disease, migraine headaches, ear pain, anxiety, depression, asthma, vertigo, temporomandibular joint disorder ("TMJ"), sleep apnea, and hypertension. Plaintiff argues that his impairments have rendered him unable to work. He therefore asserts that he is entitled to payment of disability insurance benefits.

2.    Plaintiff filed an application for disability insurance benefits on March 21, 2012. The Commissioner denied the application, after which Plaintiff timely filed a request for a hearing. Pursuant to Plaintiff's request, ALJ David S. Lewandowski held an administrative hearing on June 10, 2013. Plaintiff appeared with counsel and testified, as well as an impartial vocational expert. The ALJ considered the case *de novo*, and on August 26, 2013, issued a decision denying Plaintiff's application for benefits. On December 24, 2014, the Appeals Council denied Plaintiff's request for

review, thereby rendering the ALJ's August 26, 2013 decision the Commissioner's final decision.

3. Plaintiff filed the current civil action on February 27, 2015, challenging the Commissioner's final decision. On September 22, 2015, Plaintiff filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 9.) Defendant filed a Motion for Judgment on the Pleadings on November 23, 2015. (Docket No. 11.) After full briefing, this Court deemed the motions submitted and reserved decision. For the following reasons, Defendant's motion is granted and Plaintiff's is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted

> with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2016. He then made the following findings with regard to the five-step process, set forth above: (1) Plaintiff has not engaged in substantial gainful activity ("SGA") since his alleged onset of disability date on January 31, 2012 (R. at 27);[1] (2) Plaintiff has the following severe impairments: cervical, thoracic, and lumbar disc disease status post-assault and cervicogenic headaches (id.); (3) Plaintiff does not have an impairment or combination of impairments that meets or

---

[1] Citations to the underlying administrative record are designated as "R."

medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526 (R. at 29); (4) Plaintiff retains the residual functional capacity ("RFC") to perform sedentary exertional work as defined in 20 C.F.R. § 404.1567(a) with certain additional exertional[2] and non-exertional[3] limitations, and that this RFC precluded Plaintiff from performing any past relevant work (R. 29-31); and (5) considering the Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (R. 33). Ultimately, the ALJ concluded that Plaintiff was not disabled, as defined by the Act, at any time through the date of his decision. (R. at 34.)

10. Plaintiff challenges three elements of the ALJ's decision. Plaintiff first argues that the ALJ erred by not considering Plaintiff's TMJ, vertigo, ear pain, and hearing loss as severe impairments at Step Two of the five-step analysis. A "severe impairment" is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities," including understanding and carrying out simple instructions and responding appropriately to others in usual work situations. 20 C.F.R. § 404.1520(c); § 404.1521. An ALJ is required to identify all impairments supported by substantial evidence at Step Two, in order to avoid "prejudic[ing] the claimant at later steps in the sequential evaluation process." Lowe v. Colvin, No. 6:15-CV-06077(MAT), 2016 WL 624922, at *3 (W.D.N.Y. Feb. 17, 2016) (internal quotation omitted). "Any error in failing to identify a severe

---

[2] Plaintiff's exertional RFC further states that Plaintiff can only stand and walk up to three hours in an eight-hour workday and can sit at least six hours during an eight-hour workday all in twenty-minute intervals; Plaintiff is limited to occasional postural activities, and occasional pushing and pulling; Plaintiff is limited to rare stair climbing and crawling (representing 5% of an eight-hour workday); and Plaintiff is limited to no lifting from floor to waist level and may reach frequently, though should perform no overhead reaching. (R. 29.)
[3] Plaintiff's non-exertional RFC further states that Plaintiff is limited to a low-stress work environment, which is defined as semi-skilled tasks or less. (R. 29.)

5

impairment, however, is harmless if that impairment is specifically considered during the subsequent steps." Morales v. Colvin, No. 13-CV-550S, 2014 WL 4829351, at *4 (W.D.N.Y. Sept. 29, 2014) (citing Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (finding an alleged Step Two error harmless because the ALJ considered the impairments found non-severe during subsequent steps)); see also Diakogiannis v. Astrue, 975 F. Supp. 2d 299, 311-12 (W.D.N.Y. 2013) ("[a]s a general matter, an error in an ALJ's severity assessment with regard to a given impairment is harmless when it is clear that the ALJ considered the claimant's impairments and their effect on his or her ability to work during the balance of the sequential evaluation process") internal quotations and punctuation omitted)).

Although the ALJ did not identify TMJ as a severe impairment at Step Two, he did find Plaintiff's headaches to be a severe impairment and considered them throughout the remainder of the assessment. (R. at 27.)  Other than headaches, the only other documented symptom of Plaintiff's TMJ is an audible clicking sound noted by Dr. Dave, a consulting examiner.  (R. at 316.)  Because Plaintiff does not argue that clicking noise limited his ability to perform work activities, and because the limitations arising from Plaintiff's TMJ-induced headaches were properly incorporated into the RFC, there was no error in not specifically naming TMJ as a severe impairment at Step Two. Zabala v. Astrue, 595 F.3d 402 (2d Cir. 2010) (remand is not necessary when there is no reasonable likelihood that an ALJ's examination of the same evidence would change the RFC determination); see generally Paz v. Comm'r of Soc. Sec., No. 14-cv-6885, 2016 WL 1306534, at *13 (E.D.N.Y. Mar. 31, 2016) (remand not warranted despite ALJ's failure to recognize a particular limitation as a severe impairment because

the ALJ did identify severe impairments at Step Two, so that Plaintiff's claim proceeded through the sequential evaluation and ALJ considered the combination of impairments and all symptoms in making the RFC determination).

As to the other alleged impairments—vertigo, ear pain, and hearing loss—the ALJ properly found that "no treating or examining source noted clinical signs of any limitations related to these impairments." (R. at 27.) Dr. Paolini, a treating physician, found no symptoms consistent with vertigo and opined that Plaintiff experienced a benign positional vertigo that did not limit Plaintiff from returning to work. (R. at 403.) Moreover, Plaintiff told Dr. Paolini that he was able to cope with his mild vertiginous symptoms and that the symptoms continued to improve over time. (R. at 405.) Similarly, the medical opinion evidence in the record does not support Plaintiff's contention that hearing loss and ear pain are severe impairments. Three separate opinions, from Drs. Dave, Paolini, and Ryan (Plaintiff's treating psychologist), found that Plaintiff's hearing loss did not impact normal conversation. (R. at 408-09 (Plaintiff's hearing "grossly" normal for conversation); R. at 310-11 (Plaintiff did not experience any difficulties arising out of hearing loss; (R. at 317) (Plaintiff did not require a higher volume of speech to communicate).) Finally, the record indicates that the medical evidence cited by Plaintiff regarding his ear pain predated the alleged onset date of his disability (R. at 259-77),[4] and none of the later evidence notes ear pain as an issue. In short, to the extent that Plaintiff experienced any impairment associated with vertigo, ear pain, and hearing loss, such impairments did not "significantly limit[ ] his physical or mental ability to do basic work activities." Berry, 675 F.2d at 467. Accordingly, the

---

[4] See Medical Examination & Follow-Up Reports, dated June 2, 2011 through January 23, 2012, from Ears, Nose & Throat Care of Western New York. Plaintiff's alleged onset of disability is January 31, 2012.

7

ALJ's determination that TMJ, vertigo, ear pain, and hearing loss are not severe impairments is not a basis for remand.

11.     Second, Plaintiff argues that the RFC determination failed to properly address Plaintiff's headaches, side effects from pain medications, and ability to sit throughout an eight-hour workday.  Plaintiff contends that his testimony and the medical evidence suggest greater limitations than are currently included within the ALJ's RFC determination.  The RFC determination is at the sole discretion of the ALJ after weighing all relevant objective and subjective evidence in the record, including the claimant's medical records, acceptable medical source opinions, "other source" opinions, and the claimant's testimony regarding the alleged limitations.  20 C.F.R. § 404.1545 (noting that a claimant's RFC must be consistent with the entire medical record).

With respect to the evidence of headaches, Plaintiff points to Dr. Dave's opinion that Plaintiff's headaches sometimes persist over several hours and cause moderate limitations (R. at 317-18), as well as the indications in the record of Plaintiff's frequent complaints of headaches to his treating physicians (see R. at 259-83, 289-90, 395-98). Plaintiff alleges that this documented history of headaches demonstrates an inability to conduct daily activities and undermines the ALJ's RFC determination.  The ALJ, in reaching his RFC determination, stated that he did not attribute significant weight to Dr. Dave's opinion of the severity of the headaches because no objective medical findings supported Plaintiff's reports that his headaches profoundly limited his ability to work (R. at 316-17), and thus the opinion relied solely upon Plaintiff's subjective complaints.  The ALJ also found that Plaintiff's subjective statements regarding the alleged debilitating

nature of his headaches were not credible, because the objective medical evidence failed to corroborate them. Moreover, Plaintiff's descriptions of the severity of his headaches were also inconsistent with Plaintiff's testimony, wherein Plaintiff acknowledged that medication alleviated their severity and frequency. (R. at 52 ("[headache medication] helps to reduce the pain and then I can take another medication that helps the headache to go away").) There is no error in giving less weight to statements that are inconsistent with medical evidence, or with the remainder of the record. See Wells v. Colvin, 87 F. Supp. 3d 421, 431 (W.D.N.Y. 2015) (citing 20 C.F.R. § 404.1529(a)) (ALJ properly found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of abdominal conditions and chronic fatigue syndrome were not credible, as they were inconsistent with the medical evidence); Lay v. Colvin, No. 14-CV-981S, 2016 WL 3355436, at *7 (W.D.N.Y. June 16, 2016) (holding that ALJ was within his discretion to use objective medical record in determining the credibility of Plaintiff's statements regarding disabling limitations).

With respect to side effects, Plaintiff argues that the ALJ did not give proper weight to his elevated anxiety, mood swings, dizziness, and nausea, which are caused by his pain medication. SSR 96-7p requires the ALJ, when determining the credibility of a claimant's subjective statements that medication hampers daily living activities, to consider the following: the type, dosage, and side effects of a claimant's medication in conjunction with objective medical opinion evidence. SSR 96-7p. Here, Plaintiff's statements to various treating and examining physicians regarding his daily living habits undermine his argument. For example, Plaintiff told his physicians that the prescribed Opana aids in his ability to attend church meetings, work as a delivery driver, enjoy time

9

with his family, go camping, help with childcare, and take family vacations, and that he was able to play video games, read, and watch television. (R. at 311, 411, 382, 574.) These statements indicate that Plaintiff's daily living activities were not hindered, but were instead supported by the prescriptions. Accordingly, the ALJ did not err in his RFC determination. See Hogan v. Astrue, 491 F.Supp.2d 347, 353 (W.D.N.Y. 2007) (quoting 20 C.F.R. § 404.1529(c)(3)) ("Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions . . . , which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account. . . .").

Finally, Plaintiff contends that the ALJ erred in the RFC determination that Plaintiff can sit for six hours a day in twenty minute intervals. Nurse Practitioner ("NP") Melendez opined that Plaintiff could sit up to six hours a day in twenty minute intervals.[5] (R. at 374.) Dr. Williams, a treating physician, opined in January 2013 that Plaintiff can sit or stand up to two hours per day.[6] (R. at 513.) In a later opinion from May 2013, Dr. Williams placed no limitation on Plaintiff's ability to sit. (R. 410.) The ALJ stated that he gave significant weight to NP Melendez because his opinion was supported by records from an occupational therapist and consistent with the objective medical evidence in the record. Although the ALJ did not specifically state why he gave less weight to the postural limitation in Dr. William's earlier opinion, it is possible to infer that the ALJ found NP Melendez's opinion more persuasive because it was most consistent with the record

---

[5] Plaintiff argues that NP Melendez's medical opinion did not specify the number of hours per day that Plaintiff would be able to sit and only indicated in twenty-minute intervals. However, based upon a review of the record, this Court finds that NP Melendez indicated that Plaintiff could sit "Up to 6 hours" by drawing a line next to it.

[6] The report also states that Plaintiff is limited to lifting no more than 10 to 15 pounds, with limited bending, stooping, crawling, climbing, and squatting, and overhead reaching. (R. at 29, 410.) These limitations were weighed by the ALJ and are consistent with his RFC determination. (Id.)

10

as a whole.  Sloan v. Colvin, 24 F. Supp. 3d 315, 325 (W.D.N.Y. 2014)  ("Where . . . the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient. . . ." (quoting Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983)).  Further, "[t]he ALJ has the authority to weigh the[ ] opinions, resolve any conflicts, and determine how much weight to accord any particular opinion."  Hendricks v. Comm'r of Soc. Sec., 452 F. Supp. 2d 194, 200 (W.D.N.Y. 2006).

Having considered the parties' arguments and reviewed the record evidence, this Court finds that the RFC determination is supported by substantial evidence in the record.  Accordingly, remand is not required to reconsider the RFC.

12. Finally, Plaintiff argues that the vocational expert's ("VE") testimony regarding potential jobs for Plaintiff was inconsistent with the referenced Dictionary of Occupational Titles ("DOT"), which categorizes and defines the recommended jobs.  In his decision, the ALJ found that Plaintiff could work the following jobs: ticket seller, telephone solicitor, and information clerk.  (R. at 33.)  The DOT classifies the ticket seller position as requiring light exertion, which Plaintiff contends is inconsistent with a RFC of less than the full range of sedentary work.  At the hearing, the VE testified that computerization and scanner technology now render this job as sedentary, accounting for the inconsistency found within the DOT ticket seller description.  Despite this explanation, Plaintiff contends that the ALJ erred in failing to ask additional questions addressing the inconsistency.

It is true that "when there is an apparent unresolved conflict between VE evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p.  Furthermore, the ALJ must resolve the conflict by determining if the explanation given by the VE is reasonable and provide a basis for relying on the VE testimony rather than on the DOT information.  Id.  But, an ALJ is within her province to rely upon VE testimony that appears in relative conflict with a DOT description because a VE may be able to provide more specific, current information about jobs or occupations than the DOT.  Id.  Here, the VE thoroughly explained the differences in his testimony (R. at 68-70), and Plaintiff's counsel did not address this alleged inconsistency during the administrative hearing (R. at 70-71).  The ALJ therefore properly relied upon the VE's testimony, which reasonably explained the difference and resolved any conflict.  SSR 00-4p.

Plaintiff also argues that the ALJ committed reversible error by failing to consider that all the suggested jobs require occasional reaching and frequent hearing.  Although the RFC limits Plaintiff's overhead reaching, Plaintiff is still capable of frequent non-overhead reaching, and a review of the DOT demonstrates that the suggested jobs at Step 5 do not require overhead reaching.[7]  And, with respect to hearing loss, Dr. Dave and Dr. Paolini, treating physicians, opined that Plaintiff's hearing was grossly normal

---

[7] The ticket seller job requires the following job responsibilities: accepting payment, making change, operating a ticket-dispensing machine, accepting orders by phone or mail, keeping a balance sheet, and answering questions.  DOT 211.467-030.  A telephone sales job requires the following duties: solicit orders by phone, explain the type of service or merchandise offered, quote prices, record information about solicited offers, enter order details into a computer, report on sales activities, and contact delivery driver.  DOT 299.357-014.  An informational clerk job requires employees to perform the following: answer questions and provide information regarding the establishment, location of departments, offices, and employees, inform customer of location of items and services; receive and answer requests for information from company officials and employees; and, keep records of questions asked and answer inquiries.  DOT 237.367-022.

for conversation (R. at 317, 406), and Plaintiff has failed to establish that the recommended jobs require more than the hearing capabilities of normal conversation. Accordingly, there is no error.

13. After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective medical evidence, medical opinions, and personal testimony contained therein. This Court is satisfied that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act. Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking similar relief.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

FURTHER, that the Clerk of Court shall close this case.

SO ORDERED.

Dated: March 30, 2017
      Buffalo, New York

                                      /s/William M. Skretny
                                      WILLIAM M. SKRETNY
                                     United States District Judge